UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL MELENDEZ,

                Plaintiff,

      v.

JOHN S. FALLS, et al.,

                Defendants.

DECISION & ORDER

06-CV-6198CJS

---

        Plaintiff Michael Melendez ("Melendez") filed this action *pro se* under 42 U.S.C. § 1983 against various employees of the Attica Correctional Facility alleging that they subjected him to excessive force on April 15, 2004, and retaliated against him for exercising his legal rights by destroying his personal property while he was confined to the special housing unit. (Docket # 53). Currently pending before this Court are two motions. The first motion, filed by defendants, seeks an order compelling Melendez to authorize the release of his medical records for use in this litigation. (Docket # 61). In the second motion, plaintiff seeks to compel discovery from defendants. (Docket # 66). For the reasons discussed below, defendants' motion to compel is granted and plaintiff's motion to compel is denied.

I. **Defendants' Motion to Compel**

        This action was commenced on April 14, 2006. (Docket # 1). As discussed above, plaintiff seeks damages in connection with an incident of alleged excessive force on April 15, 2004. (Docket # 53). On May 2, 2007, and then again on December 24, 2007, counsel for

defendants requested that Melendez execute a general, unlimited authorization of release for medical records. (Docket # 61 at ¶¶ 3-4, Exs. A, B). Receiving no response, counsel again wrote to Melendez on March 25, 2009 concerning the release. (*Id*. at ¶ 5, Ex. C). On March 27, 2009, Melendez returned a signed authorization that limited the release of his medical records to those related to injuries he sustained on April 15, 2004. (*Id*. at ¶ 6, Ex. D). The release was accompanied by a letter from Melendez stating that he refused to "relin[q]uish [his] Federal and State Confidentiality rights." (Docket # 61 at Ex. D). On April 3, 2009, counsel rejected Melendez's release as inadequate and sent another proposed release, which limited the time period covered in the release from January 1, 2003 to the present. (*Id*. at ¶ 7, Ex. E). Defendants then filed the instant motion to compel on April 16, 2009. (Docket # 61).

According to Melendez, during a April 27, 2009 deposition, he consented to sign a release for the time period requested by defendants, provided that defendants agreed to disclose his medical records only to defense counsel and counsel's agents. (Docket # 66 at 14, ¶ 13). Defense counsel then sent a revised form on April 28, 2009 providing for the release of Melendez's medical records to "State of New York, by the Attorney General, any Assistant Attorney General, Investigator, or any representative or an agent thereof, for the purposes of this litigation." (Docket # 66 at 19-21). Thereafter, Melendez wrote to defense counsel seeking clarification regarding the release of his records to the State of New York. (*Id*. at 22). According to Melendez, defendants never responded to his inquiry. (*Id*. at 14, ¶ 16).

In a memorandum of law submitted in connection with the instant motions, Melendez appears to have returned to the argument that medical records not directly related to the April 15, 2004 assault are irrelevant to his claims and further requests that the Court enter an

2

order either sealing the records or directing defendants to maintain their confidentiality. (*Id*. at 16-17, ¶¶ 21, 24).

In his Complaint, Melendez alleges that the April 15, 2004 incident caused him physical injuries that required surgery and resulted in pain lasting for a year. (Docket # 53 at ¶ 21). Thus, Melendez's medical records are clearly relevant to his claim seeking compensatory damages in connection with alleged physical injuries. Although defendants are not entitled to unlimited access to his private medical records, they do have the right to inspect records that reveal medical conditions or injuries that Melendez attributes to the alleged assault or that could have contributed to or aggravated the injuries he claims resulted from that incident. The record is unclear as to whether Melendez expects to testify that his injuries are permanent or persisted after the approximate one-year period alleged in the Complaint. If Melendez is willing to stipulate that his damages claim for physical or emotional injuries related to the assault is limited to one year following the incident (as suggested by his Complaint), the release should be limited to the period January 1, 2003 to December 31, 2005 – a period that represents a reasonable period before and after the alleged injuries. Otherwise, he shall authorize the release of his records from January 1, 2003 to the present. Accordingly, by no later than **March 19, 2010**, Melendez shall provide to defense counsel a signed authorization for the release of medical records in accordance with these directions.

Further, upon review of defendants' April 28, 2009 proposed release, I find that the authorization appropriately protects Melendez's privacy concerns by limiting the categories

3

of persons permitted to view his medical records and the scope of their use.[1]  Nevertheless, Melendez has expressed a concern that his medical records will be made part of the public record as part of this litigation.  (Docket # 66 at 17, ¶ 23).  Accordingly, in the event that defendants intend to submit Melendez's medical records to this Court (*e.g.*, as part of the record on a motion or at trial), defendants are hereby directed to provide Melendez at least fourteen days' advance notice in order to permit Melendez adequate time to file a motion to seal or for a protective order.

I turn next to Melendez's motion to compel defendants' response to certain interrogatories and document requests.

## II.  Melendez's Motion to Compel

Defendants received Melendez's First Set of Interrogatories and Request for Production of Documents on May 22, 2007.[2]  (Docket # 71 at ¶ 9).  On June 1, 2007, counsel for defendants notified Melendez that his discovery requests were premature because the Court had not yet issued a scheduling order.  (*Id*. at ¶ 10).  On October 9, 2007, the Court held a Rule 16

---

[1]  Specifically, the release states:

> Records disclosed pursuant to this Release may only be used by State of New York, by the Attorney General, any Assistant Attorney General, Investigator, or any representative or an agent thereof, for the purposes of this litigation in which plaintiff has placed his medical condition at issue.  The records may be discussed and seen by defendants' counsel, co-counsel, and experts to the extent necessary for the prosecution of this action and the development of the issues; and such documents may be identified and used at depositions; and experts shall have the right to possess copies provided such copies are returned to counsel at the close of litigation.  Records disclosed pursuant shall not be redisclosed except in conformance with Federal or State confidentiality rules, and the regulations of the New York State Department.

(Docket # 66 at 21).

[2]  Melendez, a *pro se* plaintiff, did not file his discovery requests with the Court as required by Local Rule of Civil Procedure 7.1(a)(1).

4

conference with the parties and issued a scheduling order. (Docket ## 20, 21). Thereafter, on November 7, 2007, Melendez requested that counsel respond to the previously-served discovery requests. (Docket # 71 at ¶ 11). On December 11, 2007, counsel sent a letter to Melendez notifying him that defendants' responses would be filed by January 10, 2008. (*Id*. at ¶ 12). Counsel reiterated this date twice more in response to Melendez's inquiries. (*Id*. at ¶¶ 13-15). One of those occasions occurred during plaintiff's deposition, at which time plaintiff responded "okay" when counsel explained that he planned to respond by January 10, 2008. (*Id.* at Ex. F). On January 10, 2008, defendants Barowski, Conway, Hartman, James and Markowski served responses to Melendez's interrogatories, and all defendants responded to the document requests. (Docket ## 33-39). Defendants Falls, Sticht and Countermine filed their answers to the interrogatories a few days later on January 16, 2008. (Docket ## 40-42). All defendants objected to certain interrogatories and document requests.

On February 18, 2008, Melendez served a second set of interrogatories and document requests.[3] (Docket # 71 at ¶ 22, Ex. J). According to Melendez, defendants refused to respond to the requests on the grounds that they were served too late to afford defendants adequate time to respond before the Court's then-ordered discovery deadline of February 29, 2008. (Docket # 66 at 3, ¶ 12). The Court subsequently granted Melendez's motion to extend the discovery deadline and ordered defendants to respond to his second set of interrogatories and document requests by March 27, 2009. (Docket # 56). Defendants did so, objecting to several of Melendez's requests. (Docket # 60).

---

[3] Again, plaintiff failed to file his discovery requests with this Court as required.

Melendez now moves this Court for an order compelling defendants to respond to Interrogatories 4 and 8 and Document Requests 1 and 3 of his first set of discovery requests and Interrogatories 3, 4 and 7 of his second set. (Docket # 66).

### A. **Interrogatory 4 and Document Request 1**

Interrogatory 4 and Document Request 1 of the first set of discovery requests seek any and all administrative, civil and criminal complaints filed in any court against each defendant during the last five years. (Docket # 71 at Ex. A). A review of defendants' responses to Interrogatory 4 reveals that each defendant except Sticht, who has objected to the relevance of the requests, has compiled a list of civil cases filed against him. (*See* Docket ## 33-42). According to the responses, the lists were compiled either from records at Attica or from the publicly-available docket of the United States District Court for the Western District of New York. (*Id.*). Together, the total number of complaints identified, which excludes habeas corpus petitions or Article 78 proceedings, exceeds 120. (*See id.*). Each defendant objected to Document Request 1, which seeks copies of each identified complaint, on the grounds that the requested production is burdensome. (Docket # 38).

Melendez does not contest the adequacy of defendants' response to Interrogatory 4; rather, Melendez contends that defendants are obligated to provide him with copies of each of the federal complaints identified in defendants' interrogatories. (Docket # 66 at 7-8, ¶ 27). Melendez argues that defendants have waived any objections to the requested discovery by not timely responding. (Docket # 77 at ¶ 12). Defendants contend that their responses were timely made in good faith considering Melendez's failure to object when defense counsel proposed January 10, 2008 as the response date. (Docket # 71 at ¶ 27). Melendez further contends that his

6

status as a prisoner hinders his ability to obtain copies of the federal complaints and that defendants therefore should bear the burden of producing the requested complaints. (Docket # 66 at 8, ¶ 29). Defendants counter that they do not possess copies of the complaints and if they are ordered to produce them (by printing them from the court's website), Melendez should be required to pay a photocopying fee of $0.05 per page.[4] (Docket # 71 at ¶¶ 27, 28; Docket # 72 at 4-5).

Melendez is correct that failure to raise timely objections generally results in a waiver of those objections. *E.g.*, *Land Ocean Logistics, Inc. v. Agua Gulf Corp.*, 181 F.R.D. 229, 236 (W.D.N.Y. 1998) (collecting cases); *Williams v. Nat'l Hous. Exch. Inc.*, 165 F.R.D. 405, 409 (S.D.N.Y. 1996). "A party's failure to respond to discovery demands within the required time frame may, however, be excused by the Court for good cause." *Melendez v. Greiner*, 2003 WL 22434101, *2 (S.D.N.Y. 2003) (citing Fed. R. Civ. P. 33(b)(4)). *See also Davis v. City of New York*, 1988 WL 42189, *2 (S.D.N.Y. 1988) (it was not clear error for the magistrate judge to consider defendants' untimely objections because "[i]t is well settled that the protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion").

Here, defendants' counsel communicated with Melendez about the response date to his discovery requests. Based upon counsel's conversation with Melendez at his deposition, I find that counsel reasonably and in good faith believed that Melendez had consented to the proposed January 10 deadline. Accordingly, I find that defendants have not waived their

---

[4] That cost is lower than the cost that the Clerk's Office for the United States District Court for the Western District of New York charges to provide copies of electronically-filed documents.

7

objections to any of the discovery requests. I further find that defendants have adequately answered Interrogatory 4. Accepting defendants' representations that they do not currently possess copies of the complaints in the civil actions identified in the interrogatories, I decline to compel the production of over 120 complaints. Accordingly, Melendez's motion to compel responses to Interrogatory 4 and Document Request 1 of his first set of discovery requests is denied.[5] I will permit Melendez, however, to supplement his discovery requests to tailor more narrowly his requests in order to identify those complaints relevant to the claims at issue in this lawsuit.[6] Any such supplemental requests must be served by no later than **March 19, 2010**.

### B. Interrogatory 8 and Document Request 3

In Interrogatory 8 and Document Request 3 of his first set of discovery requests, Melendez seeks "any and all grievances filed by inmates . . . complaining of being assaulted by correction officers in Attica during the four years prior to April 15, 2004." (Docket # 71 at Ex. A). The request is not limited to grievances filed against the individually-named defendants in this case. Defendants have objected to this request as irrelevant and overbroad. (Docket # 38). In addition, defendant Conway has submitted an affidavit explaining that the Department of Correctional Services ("DOCS") does not index grievances by the corrections officer named, but by the name of the complaining inmate. (Docket # 34). For that reason, a response to this request would require the review of every Attica inmate's file. (*Id.*). Given the scope of the request – all grievances filed over a four-year period complaining about excessive use of force by

---

[5] Interrogatory 7 and Document Request 1 of Melendez's second set of discovery requests seek the same information as that requested by Interrogatory 4 and Document Request 1 of the first set of discovery requests. (Docket # 71, Ex. J). Thus, the motion to compel responses to those requests is denied as well.

[6] Melendez may then request copies of the complaints in those cases from the appropriate court clerk's office upon payment of the applicable fees.

8

any Attica correctional officer – I conclude that the request as framed is overbroad and unduly burdensome. Plaintiff's motion to compel the production of Interrogatory 8 and Document Request 3 of his first set of discovery requests is therefore denied.

### C. Interrogatories 3 & 4 and Document Request 1

Finally, Interrogatory 3 and Document Request 1 of his second set of discovery requests seek "any and all administrative loss of property claims filed at and/or against Attica Correctional Facility from January 1, 1998 through January 1, 2005 by inmates, who claimed loss of personal property as a result of being placed in the special housing unit at Attica Correctional Facility." (Docket # 71 at Ex. J). Interrogatory 4 of his second set of discovery requests seeks identification of "each and every person(s) currently in possession of said personal property claims." (*Id.*). Defendants have objected to these requests as irrelevant, overbroad and vague. (Docket # 60). According to the affidavit of Karen J. Bielak ("Bielak"), who is employed by DOCS as an "Institutional Steward" at Attica, records of inmate claims for lost property between 1998 and 2001 were destroyed in the ordinary course of business. (Docket # 71 at Ex. J). Bielak's affidavit further states that 232 lost property claims were filed by Attica inmates between 2002 and 2005 and that production of those claims would take over a dozen hours. (*Id.*).

Although Melendez's Complaint alleges that some of his property was destroyed while he was confined to the special housing unit, it is unclear how other inmates' claims of lost property are relevant to his claims. Given the substantial time that apparently would be required to produce the requested records, and their undemonstrated relevance, I deny Melendez's motion

to compel responses to Interrogatories 3 and 4 and Document Request 1 of his second set of discovery requests.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to compel **(Docket # 61)** is **GRANTED** and plaintiff's motion to compel **(Docket # 66)** is **DENIED**.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 3 , 2010